Our first case for argument this morning is Kumar v. Mukasey. Good morning, your honors. May it please the court, my name is Christine Lin and I represent the petitioner Vinod Kumar. Your honors, the board violated Mr. Kumar's due process rights by evaluating his asylum and withholding claims under a legal standard that was significantly different from the one in effect at the time of his final hearing before an immigration judge, which took place seven and a half years earlier in October. That opinion came down a couple of weeks before he had to file his brief with the BIA, is that correct? Yes, your honor, that is correct. At the time of Mr. Kumar's hearing, he was only required to demonstrate a causal connection between a protected ground and the persecution or threats he received. The case law in this circuit at that time, which was governed by Maldonado Cruz v. INS, and this circuit's 1990 decision in Liasac or IS v. INS, explicitly directed the immigration judges to consider the political goals of the persecutor and whether the persecutor's political goals were a motivation to harm a particular individual. As in Maldonado Cruz, where this court determined that an individual's refusal to join the guerrillas was a political opinion hostile to the persecutor, Mr. Kumar, a Hindu, demonstrated his political opinion when he refused to give money to armed Sikh separatists. Mr. Kumar's refusal was an expression that was hostile to his persecutors and therefore constituted a political opinion. So how would you, if you had individuals from two different sects, religions or otherwise, and you have a garden variety extortion case, how would you ever keep extortion from not passing into political persecution under your theory? Well, Your Honor, in this case, I believe it's very similar to some of the other Ninth Circuit cases. For example, in the Ninth Circuit's case in Borja v. INS, the applicant was confronted while working at her parents' business and extorted for money and that constituted her political opinion and she was found to have had suffered past persecution in that case. Your Honor, similar to Maldonado Cruz, where the guerrillas were forcibly recruiting to increase their fighting power, the Sikh extremists who attacked Mr. Kumar were seeking to increase their financial power for the separatist cause. During the pendency of Mr. Kumar's appeal, the Supreme Court reversed this Court's decision in Elias Zacharias, finding that the phrase persecution on account of a political opinion is persecution on account of the victim's political opinion, not the persecutor's. The Supreme Court found that a generalized political motive underlying the persecutor's actions against an individual is inadequate to establish the nexus requirement. Because the Supreme Court has not yet issued its decision in Elias Zacharias at the time of his immigration court proceedings, Mr. Kumar had absolutely no notice of the Supreme Court's heightened legal standard applied by the board, which required him to present direct or circumstantial evidence that he, rather than his persecutors, actually holds a political opinion and that his persecutors were motivated to persecute him because of that opinion. Since the Supreme Court's standard imposed a significantly different burden on asylum applicants than at the time of Mr. Kumar's hearing, it was fundamentally unfair for the board to hold Mr. Kumar to this new standard when his hearing predated the decision and he clearly could not have had any notice of this new standard. There are two controlling Ninth Circuit cases on this issue. But we shouldn't, shouldn't we allow the BIA to take the first shot at this, even if your theory is correct? Well, Your Honor, the BIA... I mean, the honest truth is what you're suggesting is that a decision which came down before you went to the BIA, before you submitted your brief to the BIA, and yet after the IJ's decision somehow made the burden heavier on your client. Wouldn't that be something that our court ought not to rule about without having the BIA talk about it first? Well, Your Honor, Mr. Kumar wasn't... he didn't know until 1999 when... That isn't my question. My question isn't what are the facts. The question is if all the facts are true as you've suggested them, shouldn't the BIA be the first one to talk about this rather than us? Your Honor, that is a possibility. And one way we could resolve this is a rematch back to the BIA to consider the case under the old evidentiary standard. Shouldn't this have been raised before the BIA to begin with? Well, Your Honor, there was no way for Mr. Kumar to have raised this before the BIA when he filed his appeal, because he didn't know that the BIA was going to apply this heightened evidentiary standard. We... Mr. Kumar believed that he was going to... that the BIA would apply the evidentiary standard at the time of his proceedings, and he had no notice of that until the BIA issued its decision in 1999. Your Honor, there are... this is a... The case had come down though, correct? Yes, Your Honor. The case had come down, but Mr. Kumar had no notice that the the BIA was going to apply a heightened evidentiary standard, and he had no ability to present evidentiary evidence to support that. There are two controlling Ninth Circuit cases... He moved for reconsideration? He did file a motion to reopen on five occasions that was denied. It's in the Board's record, and so we believe this is the appropriate place to hear this. The Ninth Circuit cases in SIDU v. INS and SINGH v. INS... We don't have those motions to reopen or reconsider in front of us, do we? Your Honors, I believe they are at the administrative record. But that's not what's been appealed. But that's not what's been appealed, Your Honor, so I don't believe that that's the appropriate consideration at this time. Counsel, I think there's another issue that you need to address, and that's the fact that apparently the father went to Calcutta and it would seem that they could live safely there. I don't think there have been any incidents since the father went to Calcutta. Well, Your Honor, actually the Board misstates the record when he finds that the father went to Calcutta and had apparently no problems. In actuality, Mr. Kumar testified, and this is in the record at 157, that the Sikh separatists might be looking for his father and that his father wanted to leave India but didn't get a chance to leave. The Board also failed to consider Mr. Kumar's credible testimony that he had heard of other killed by Sikhs in Delhi, Bombay, and Madras, all areas outside of Punjab. This is at the administrative record at 159. Therefore, substantial evidence doesn't support that Mr. Kumar could safely relocate within India. But in fact, if we're just looking at the well-founded fear of future persecution, which is where we are, then we're looking at the objective evidence, because if we give him credibility, then his subjective fear of future persecution is over. But the objective fear, we're looking at the evidence. And then we look at the substantial evidence that's in the record. And the substantial evidence in the record is his father has lived in Calcutta and presently still lives in Calcutta and has not been subject to the same problem. Therefore, under a substantial evidence standard, the case is pretty well done, even though we can articulate other particular evidence that may be contrary. Well, Your Honor, this record is from 1991. There's no indication that the father is still actually living at Calcutta at this time. But the evidence submitted at the time of Mr. Kumar's hearing suggests that 168 and 171 of the record demonstrate that Sikh militants who Mr. Kumar fears have the ability to carry out their threats as Sikh separatists have engaged in bombings, sabotage, and indiscriminate murders of numerous government officials and civilians. But then there's a global statement that really doesn't relate to the family here as to what happened to the father. We don't have any evidence to connect that statement to the father. Your Honor, I would actually like to reserve time for rebuttal at this point. Can I answer my question first? Sure. Your Honor, I believe that it's not just but in the context of immigration cases, the Court has found that evidence that of general country rights strife can be used in the objective fear. And in this instance, there's very credible evidence submitted at pages 168 and 171 of the record to show that Sikh militants do carry out their threats. I'd like to reserve time. All right. Thank you. May it please the Court. My name is Samia Nasim. I represent the Attorney General. The Attorney General respectfully requests that this Court deny the petition for review for two reasons. First, the record does not compel the conclusion that Mr. Kumar established eligibility for asylum or withholding of removal where he failed to establish a nexus between his Hindu religion or his imputed political opinion and threats to his life by Sikh extremists who were demanding money from his father. Secondly, Mr. Kumar has failed to exhaust his due process claim which he raised for the first time in his opening brief and therefore the Court lacks jurisdiction to review it under 8 U.S.C. 1252 D1. Moreover, Mr. Kumar can relocate. His father has been living in Calcutta. As to the due process claim, if she is correct that there was no opportunity to raise the issue before the BIA decided it, her first opportunity to talk about it is up here before this Court. She tried to reopen and that was denied. Respectfully, Your Honor, the petitioner did not file their administrative appeal to the Board until after Elias Zacharias had been decided. I believe it was two months after and they should have had notice. They had appropriate counsel and they should have had notice that a new decision had been made. The record shows two weeks, but I don't know. I believe it was two months, Your Honor, but we can certainly look into that. However, he was adequately represented at the time and he did in fact file his appeal to the Board of Immigration Appeals after the decision came down in Elias Zacharias and should have considered that. If at the time Mr. Kumar felt that there was a new standard, he should have in fact raised that to the Board and asked for the Board to send this back. What happened to those motions to reopen? Were they denied for lack of timeliness? Yes, Your Honor. In fact, all of those motions to reopen were denied for lack... The first one that he filed was actually filed and he was requesting cat protection and the Court found that he was not eligible for that and denied that motion to reopen. All subsequent motions to reopen were denied for... They were time barred and they were also numerically barred and therefore those were also... And those are not up for review today actually and he has not filed petitions for review based on any of those motions to reopen. So in the first motion to reopen on cat, he didn't raise the Elias Zacharias? No, Your Honor. He did not raise Elias Zacharias in his motions to reopen? No. Your Honor, the government feels that Mr. Kumar can relocate. His father has been living in Calcutta since 1989. There have been no reported problems since then. Mr. Kumar has not in 17 years submitted any additional evidence or filed a motion to reopen on account of any new fears or threats against him or his father in Calcutta and as the record shows, Hindus constitute 83% of the population in India where Sikhs, Jains, Buddhists, and Parsis constituted only 2% of the population. Moreover, the evidence on the record shows that Sikhs target Hindus in the Punjab region only with the exception of top officials and Mr. Kumar certainly has not established that he is a top official. Barring any other questions from this petition for review. Thank you. Do you have a short time for rebuttal? Yes, Your Honor. I just want you to consider situancing and that they require that due process be given to Mr. Kumar so that he be given the opportunity to prove his eligibility for asylum under the Supreme Court's decision in Elias Zacharias. The board's denial of Mr. Kumar's based upon an alleged failure to meet the standard that he could not have had notice of at the time of his hearing renders his proceedings fundamentally unfair. Thank you, Your Honors. Thank you. Thank both of you for your argument this morning.
judges: B. Fletcher, McKeown, N.R. Smith